UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LOIS STOGSDILL,                                              Case No. 1:13-cv-657

            Plaintiff,                                       Dlott, J.
                                                            Bowman, M.J.
      v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Lois Stogsdill filed this Social Security appeal in order to challenge the
Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding
through counsel, Plaintiff presents three claims of error, all of which the Defendant
disputes.  As explained below, I conclude that the ALJ's finding of non-disability should
be AFFIRMED, because it is supported by substantial evidence in the administrative
record.

## I.  Summary of Administrative Record

On January 27, 2010, Plaintiff protectively filed an application for Disability
Insurance Benefits ("DIB"), alleging disability as of January 12, 2009.  (Tr. 157-163).
After Plaintiff's claim was denied initially and upon reconsideration, she requested a
hearing *de novo* before an Administrative Law Judge ("ALJ").  An evidentiary hearing, at
which Plaintiff was represented by counsel, was held on March 5, 2012. (Tr. 28-66).  An
impartial a vocational expert, Dr. Donald Shrey, was also present and testified.  On April
27, 2012, the ALJ denied Plaintiff's application in a written decision.  (Tr. 19-28).

The record on which the ALJ's decision was based reflects that Plaintiff was 33 years old at the time of the administrative hearing and a high school graduate.   She had past relevant work as a call center employee, medical biller, newspaper delivery person, medical assistant and waitress, last working in September 2009. (Tr. 182-183). She alleges disability due to fibromyalgia and low back and neck pain. (Tr. 157, 181).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "depression, anxiety, and degenerative disc disease of the cervical spine." (Tr. 12).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform the full range of sedentary work with the following nonextertional limitations:

> She cannot understand, remember, and carry out complex job instructions.  She cannot understand, remember, and carry out detailed, but not complex job instructions.  Due to difficulty maintaining attention and concentration and pace for extended period, the job must be routine and repetitive, and be far enough from others to reduce distractions, and not require intense focused attention until the next scheduled break, and have no assembly line type of work which forces an inflexible pace.  She will sometimes need reminders to stay on task.  She has difficulty making work-related decisions, setting realistic goals, making independent plans, and using judgment on the job as distinct from a job that is routine and repetitive, so do not give her a job that requires such independent judgment.  She has a slow work pace.  The job itself must be inherently not highly stressful.  The job either must alternate sit/stand at will, or must have the opportunity to stand and stretch briefly frequently, or must have a significant amount of work done standing up, all as set out in Exhibit 24.

(Tr. 14-15).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national

2

economy, including such jobs as order clerk and information clerk. (Tr. 21). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) failing to fully develop the record; 2) failing to find that Plaintiff's fibromyalgia was a severe impairment; 3) failing to give controlling weight to the opinions of Plaintiff's treating physicians. Upon close analysis, I conclude that none of the asserted errors requires reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### B.  Specific Errors

#### 1. *Development of the record*

Plaintiff's first assignment of error asserts that the ALJ failed to develop the record as required by Agency regulations.  Social Security proceedings are "inquisitorial rather than adversarial," such that an ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). However, ordinarily an ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster,* 279 F.3d at 357 (citing 20 C.F.R. § 404.1517). "Only under special circumstances, when a claimant is without counsel, not capable of presenting an effective case, and unfamiliar with hearing procedures does the ALJ have a special duty to develop the record." *Rise v. Apfel, Comm'r of Soc. Sec.,* No. 99–6164, 2000 WL 1562846, at *2 (6th Cir. 2000) (citing *Lashley v. Sec. of Health and Human Services,* 708 F.2d 1048, 1051–52 (6th Cir.1983)).

Here, in calculating the non-exertional limitations for his RFC, the ALJ relied on the report of consultative examiner, James Rosenthal, Psy.D. (Tr. 15). Dr. Rosenthal evaluated Plaintiff in January 2012 and, after examination and testing, concluded that

Plaintiff did not have any difficulty understanding or following simple one- or two-step job instructions, but would require reminders from bosses and prompts to stay on task for multi-step or complex jobs. (Tr. 17, 563). He reported that Plaintiff would have difficulty sustaining concentration on multi-step or complex tasks with slow pace. (Tr. 17, 563). Dr. Rosenthal also indicated that Plaintiff should have limited interaction with bosses and coworkers, as Plaintiff reported restricting her social activities due to her depressive symptoms, as well as limitations due to work pressure increases. (Tr. 17-18, 563-64).

Dr. Rosenthal also completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" and indicated that Plaintiff had mild limitations in her ability to get along with supervisors, coworkers and the public. (Tr. 567). Although Dr. Rosenthal check boxes indicating that Plaintiff had only mild limitations with such interaction, his narrative explanation states: "social withdrawal and low motivation with depressed mood will likely result in decreased social interaction." (Tr. 567).  The ALJ discussed Dr. Rosenthal's narrative report and opinion of Plaintiff's RFC and stated that there was some disconnect between the text and RFC form, but concluded that it was not so significant so as to cast doubt on his RFC finding. (Tr. 18).  Plaintiff contends that this discrepancy had a significant impact on the issue of disability, and as such it was essential that the ALJ fully develop the record.  Plaintiff's contention is not well-taken.

As noted by the Commissioner, the ALJ discussed Dr. Rosenthal's narrative report and text and RFC form, but concluded that it was not so significant so as to cast doubt on his RFC finding (Tr. 18).  The ALJ's decision is substantially supported in this regard.  As detailed below, Dr. Rosenthal also noted that Plaintiff reported that she hhad

social problems on past jobs. He described her as polite and cooperative.  Additionally, Plaintiff testified that she was able to be around other people (Tr. 18, 42) and admitted that it was not a problem for her to interact with other people.  (Tr. 43).  In light of the foregoing, the ALJ reasonable found that the record evidence did not show that Plaintiff was more limited socially than already accommodated in his RFC finding. As such, the ALJ properly determined that the current record contained sufficient evidence to make a proper disability determination.  See *Foster,* 279 F.3d at 357 (citing 20 C.F.R. § 404.1517) (an ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.").

Accordingly, Plaintiff's assignment of error should be overruled.

2. *Evaluation of Plaintiff's fibromyalgia*

Plaintiff complains that the ALJ erred at Step 2 of the sequential analysis when he failed to find her fibromyalgia to be "severe." For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. *See* 42 U.S .C. § 423(d)(1)(A); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

Based upon the lack of records, the ALJ concluded that neither Plaintiff's "complaints of lightheadedness and dizziness" nor her alleged diagnosis of fibromyalgia were "medically determinable." (Tr. 14).  Although the ALJ did not specifically determine whether Plaintiff's low back pain was "medically determinable," he did not include any of

the three conditions (dizziness, fibromyalgia, or low back pain) in his listing of Plaintiff's "severe" impairments.

Errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone ...." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments, including depression, anxiety, and degenerative disc disease of the cervical spine; and therefore proceeded through the five-step sequential analysis. Even if there was an error, then, the ALJ's failure to consider any of the three conditions as "severe" at Step 2 of the sequential analysis will not necessarily require reversal or remand. As discussed below, I find no error requiring reversal or remand in this case, because the ALJ adequately considered all of Plaintiff's conditions in determining her RFC.

Here, with respect to Plaintiff's fibromyalgia, the ALJ noted that Plaintiff "reported multiple joint pains, and was diagnosed with fibromyalgia; however, signs and findings on musculoskeletal and neurological examination are generally within normal limits."

(Tr. 13).  The ALJ also noted that the record is "also tainted by the spurious diagnoses of fibromyalgia." (Tr. 19).  The ALJ noted that while Dr. Rissover made the diagnosis of fibromyalgia, he determined that such a diagnosis was not supported by his treatment notes.

By rejecting the diagnosis of fibromyalgia, Plaintiff contends that the ALJ is substituting his own opinion for that of the physicians. An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make his own independent medical findings. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (*citing Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) and *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).  As such, Plaintiff contends that the evidence of record overwhelmingly supports the diagnosis of fibromyalgia made by her treating rheumatologist and other physicians.

Notably, however, it is well established that a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment).  More importantly, contrary to Plaintiff's assertion, the ALJ properly accounted for her symptoms related to fibromyalgia by limiting her to a range of sedentary work, with either a sit/stand option at will, the opportunity to stand and stretch briefly [but[ frequently, or must perform a significant amount of the work standing up.  (Tr. 14-15).  The ALJ's decision clearly indicates that he properly considered all of Plaintiff's impairments (severe and non-severe) in formulating Plaintiff's RFC.

### 3. Weight assigned to the treating physician

Plaintiff's final assignment of error alleges that the ALJ erred in failing to accept the physical functional limitations found by her treating physician, Janalee Rissover, M.D. Plaintiff further contends that the ALJ erred by failing to include any limitations regarding Plaintiff's interaction with others as found by Dr. Rosenthal.

20 C.F.R. § 404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added). *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir.2003); *See also* 20 C.F.R. § 1527(d)(2). Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir.1994); accord *Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230–231 (6th Cir.1990) (affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine). In this case, as explained below, the ALJ discounted Dr. Rissover's findings because they were not supported by any clinical or objective findings. (Tr. 19).

Dr. Rissover completed a "Physical Residual Functional Capacity Questionnaire" preprinted form in December 2010. Dr. Rissover limited Plaintiff to sitting and

standing/walking less than 2 hours in an 8-hour day, with sitting no more than 10 minutes at one time or standing more than 5 minutes at one time. (Tr. 508). She further determined that Plaintiff would need a break every 1 to 1 ½ hours, for at least 1 hour. (Tr. 508-509). Plaintiff could occasionally lift less than 10 pounds and rarely stoop (bend), crouch/squat or climb stairs. (Tr. 509). She would miss more than four days per month. (Tr. 510).  In other words, Dr. Rissover assigned Plaintiff functional limitations that would prevent her from performing full-time work. (Tr. 505- 10).  When asked to identify clinical signs and findings to support her opinion, Dr. Rissover indicated that Plaintiff had a positive physical exam and cervical disc bulging at C4-5 as well as another level. (Tr. 506).

In weighing the opinion evidence, the ALJ gave "no weight" to Dr. Rissover's findings.  (Tr. 19).  In so concluding the ALJ stated:

> Doctor's notes say the doctor and patient prepared it together.  Also, the claimant testified that Dr. Rissover asked her questions regarding her limitations and she (Dr. Rissover) recorded her answers.  Thus, the RFC appears to be based on claimant's subjective allegations and is not supported by the medical evidence of record.

(Tr. 19).

Plaintiff asserts that the ALJ erred in giving no weight to Dr. Rissover's findings. Notably, Plaintiff contends that Dr. Rissover's findings are supported by the record.  In this regard, Plaintiff notes that Dr. Rissover's treatment notes indicated positive findings on exam and MRI result show evidence of cervical disc bulge.  (Tr. 506). Dr. Rissover has treated Plaintiff since at least 2009. She has established a treating relationship with Plaintiff and is in the best position to offer an opinion as to Plaintiff's limitations. Dr. Rissover has ordered imaging studies, laboratory studies and found multiple trigger

points and restricted range of motion..   (Tr. 511, 516, 518-520, 551, 553, 597-598).

Plaintiff admits that she discussed the questionnaire with Dr. Rissover, however, she

contends that there is no evidence that the limitations on the form are based solely on

Plaintiff's subjective complaints, as alleged by the ALJ.  Plaintiff's contentions are not

well-taken.

     It is well settled that an ALJ may properly discount a treating physician's opinion

based on a claimant's subjective complaints and if unsupported by objective findings.

*See Warner v. Commissioner of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) ("Dr.

Sonke's conclusion regarding the amount of weight that Warner could lift regularly

appears to be based not upon his own medical conclusion, but upon . . . Warner's own

assessment of his weight-lifting limitations."); *McCoy ex rel. McCoy v. Cater*, 81 F.3d 44,

47 (6th Cir. 1995) (ALJ reasonably discounted treating physician's opinion where

claimant's subjective complaints were unsupported by objective findings).   Here,

Plaintiff's testimony, as well as Dr. Rissover's treatment notes, indicates that the

purpose of Plaintiff's visit on December 2, 2010 was filling out forms for her lawyer for

Plaintiff's social security appeal. (Tr. 518). The ALJ also recognized that Plaintiff

testified that during that December 2, 2010 visit, Dr. Rissover asked her the questions

on the form, and Plaintiff gave her the answers. (Tr. 19, 44).

     Furthermore, the ALJ's RFC determination is supported by the opinions of the

state agency physicians as well as the objective medical evidence of record.  Notably,

the ALJ thoroughly reviewed and evaluated the medical evidence in formulating

Plaintiff's RFC.  In this regard, the ALJ noted that an MRI on May 20, 2011 showed only

minimal to mild degenerative and discogenic changes from the C3-C4 level through the

C5-C6 level.  (Tr. 16).  The ALJ also noted that MRIs of Plaintiff's thoracic spine were unremarkable.  Treatment notes indicate that Plaintiff's gait, tone and muscle bulk were normal.  The ALJ also noted that Plaintiff reported 40% to 60% pain relief with medication.  In light of the foregoing, the undersigned finds that the ALJ reasonably discounted the extreme limitations found by Dr. Rissover.

With respect to Plaintiff's mental impairments, Plaintiff contends that the ALJ failed to add any limitations regarding Plaintiff's interaction with others.  Notably, Plaintiff asserts that Dr. Rosenthal found that Plaintiff had a limitation in interacting with co-workers, supervisors and the public.  Although the ALJ relied on Dr. Rosenthal's opinion when determining his RFC, he did not mention this limitation. Plaintiff's contention again lacks merit.

As noted above, Dr. Rosenthal indicated that Plaintiff had mild limitations in her ability to get along with supervisors, coworkers and the public. (Tr. 567). In this regard, Dr. Rosenthal stated: "social withdrawal and low motivation with depressed mood will likely result in decreased social interaction." (Tr. 567).  However, Dr. Rosenthal also noted that Plaintiff reported that she has had social problems on past jobs. He described her as polite and cooperative.  Additionally, Plaintiff testified that she was able to be around other people (Tr. 18, 42) and admitted that it was not a problem for her to interact with other people.  (Tr. 43).  In light of the foregoing, the ALJ reasonably found that the record evidence did not show that Plaintiff was more limited socially than already accommodated in his RFC finding.

13

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff's DIB benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) As no further matters remain pending for the Court's review, this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LOIS STOGSDILL,                                          Case No. 1:13-cv-657

        Plaintiff,                                     Dlott, J.
                                                        Bowman, M.J.
        v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

15